**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF**

**COLUMBIA**


CS # ORIGINAL PROCEEDING

JOHN DOE,

Similarly situated citizens of the United States,

Similarly situated "BOAT STRIKE" victims,

Similarly situated "EPSTEIN" and other assault victims,

Similarly situated I.C.E. detained U.S. Citizen victims,

Similarly situated "ETHNICALLY CLEANSED" legal and undocumented

migrant victims,

Similarly situated "AFFORDABILITY" victims, et al.


Plaintiffs

v.

United States of America,



RECEIVED

JAN 07 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

Donald J. Trump, a.k.a. " THE DOG THAT DIDN'T BARK" in his purported

official and individual capacities,

Elon Musk, in his purported official and individual capacities,

Stephen Miller, in his purported official and individual capacities,

J.D. Vance, in his purported official and individual capacities,

United States Doge Service,

Department of Government Efficiency,

Republican National Committee,

The Republican Party and Parties of the United States a.k.a. Grand Old

Party, all members,

Unknown Transition donor Jane Does and Unknown Transition donor John

Does,

The Heritage Foundation,

Fox News Network LLC,

Timothy Kelly, in his purported official and individual capacities,

Carl Nichols, in his purported official and individual capacities,

Angela D. Caesar Clerk of Court, in her purported official and individual capacities,

Jean-Claude Douyon, Operations Supervisor, in his purported official and individual capacities,

Megan Bleskoski Case Administrator, in her purported official and individual capacities,

Claude Alde Case Administrator, in his purported official and individual capacities,

Unknown Intake clerk(s), in his or her purported official and individual capacities, et al.

       Defendants


## MOTION TO PROCEED UNDER PSEUDONYM, FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND, PROTECTIVE ORDER

Comes now the Plaintiff John Doe pursuant to Federal Rules of Civil Procedure 5.2, 26(c) and, 65 and respectfully moves this Court for an order

granting him leave to proceed under pseudonym, for a temporary
restraining order, preliminary injunction and, protective order limiting
disclosure of identity to specific defendants necessary to effectuate the
T.R.O. and preliminary injunction.

## BACKROUND

1.           Plaintiff has filed in case 1:25-cv-1229 a Complaint
    seeking declaratory, injunctive, monetary relief and trial by jury
    alleging in part defendants have threatened and incited violence
    against judges, lawyers, political rivals, litigants, and others who are
    in opposition or challenge alleged unconstitutional conduct, and their
    families. In this newly filed case, while related, plaintiff DISTINCTLY
    seeks relief for defamation per se.

2.  Underlying the 8 causes of action in 1:25-cv-1229 (the related case),
    Plaintiff has defined the primary objective of defendants' overarching
    policy of governance and jurisprudence entitled "project 2025" simply
    as "abolition of the OPERATIONAL existence of the Constitution",
    "reducing the constitutional guarantees of black, brown, women,
    lgbtq, the impoverished and other protected classes to the discretion
    of white supremacist officials in all 3 branches, not to investigate or
    determine whether a violation has transpired, but instead to whether

they will ALLOW the right or protection freely given to the white and wealthy" (doc 1,16,29  1:25-cv-1229). Plaintiff incorporated the factual basis of every lawsuit filed in opposition of the current administration. https://www.justsecurity.org/107087/tracker-litigation-legal-challenges-trump-administration/ https://apnews.com/projects/trump-executive-order-lawsuit-tracker/ https://www.justsecurity.org/107087/tracker-litigation-legal-challenges-trump-administration/

3.   Defendants Kelly and Nichols have submitted argumentative defenses under guise of judicial function to hinder the challenge to the Project 2025 POLICY complained of in that case, to defame the plaintiff and those similarly situated, tantamount to an ongoing threat of kidnapping and murder under guise of official conduct already suffered by the plaintiff Doe. Directly and incidentally U.S. citizens, migrants, protected status migrants, women, children have been murdered, kidnapped, sexually assaulted, defamed and disappeared under guise of official conduct.

4.         Plaintiff contends that no one in the United States should be dissuaded from assertion of the Constitutional rights to seek redress

and to self-representation, but that instead the intended fear mongering requires a penalty from the beginning against the defendants for attempting to interfere or impede with litigation before, during, and after. The defendant's conduct should be recognized as a "self-inflicted" challenge to their own ability to defend when balancing it with the very safety of litigants and the right to seek redress. The plaintiff's and others right to seek redress and do so without threat of violence outweighs the defendants' right to build a defense based upon identifying facts when the threat is live, and ongoing but curable. Defendants can "cure" this issue by simply being honest with those, for example, who engaged in an insurrection against the government. Defendants should not "install" coconspirators to implement the project 2025 policy complained of in positions of power. Power and competence are not the same.

5.    Defendants have released nearly 1500 persons that were in some way involved with an attempted coup of the government on January 6th, 2021.

6.    Defendants under guise of official conduct threaten lawyers who were involved in adverse litigation.

7.    Defendants, under guise of official conduct have murdered, kidnapped, sexually assaulted, defamed and disappeared people under guise of official conduct.

8.    The plaintiff was himself kidnapped to prison under a false identity and was subjected to violence at the hand of white supremacist gang members solicited by the defendants. Plaintiff is permanently disabled as a result of the decades long patterned systemic course of conduct of government officials tied to the "Project 2025" policy complained of. Violations of ALL known Constitutional rights have been implemented, but, from positions of power like Kelly and Nichols, that conduct is concealed.

9.    Plaintiff's Complaint was filed without data that would lead to identification of the plaintiff and his family and under normal circumstances would make it more difficult to defend calling into question pleading requirements. Public disclosure of this sensitive information to the parties to the transaction and any third parties will impact the safety of the plaintiff and his family.

The primary plaintiff alleges as follows in support of granting all the requested relief.

## A.   MOTION TO PROCEED UNDER PSEUDONYM

10.      Pursuant to F.R.C.P. 5.2 and 26(c), the plaintiff may obtain an
order allowing him to proceed under pseudonym. On 05/20/25 this
honorable court granted plaintiff's prior pseudonymity motion filed in
1:25-cv-1229. The grounds remain the same other than, case in
point, defendants and witnesses Kelly and Nichols participate in the
ongoing threat of violence. In that case, the plaintiff specifically
addressed the five-factor inquiry that applies to such requests and
realleges them here. See In re Sealed Case, 971 F.3d 324 (D.C. Cir.
2020).

11.      In re Sealed Case, 971 F.3d 324 (D.C. Cir. 2020) the court
reiterated that "Once a legitimate showing of need has been made,
the court must then "balance the litigant's legitimate interest in
anonymity against countervailing interests in full disclosure." _In re
Sealed Case,_ 931 F.3d at 96. This balancing test is necessarily
flexible, and fact driven."

12.      As a starting point, the court will weigh the following five non-
exhaustive factors:

[1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;

[2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

[3] the ages of the persons whose privacy interests are sought to be protected;

[4] whether the action is against a governmental or private party; and, relatedly,

[5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

13.     Plaintiff alleges as follows in support of granting plaintiff's motion to proceed under pseudonym.

## FACTOR 1

**[1] The justification asserted by the requesting party is NOT merely to avoid the annoyance and criticism that may attend any litigation and is to preserve privacy in a matter of [a] sensitive and highly personal nature.**

14.     Under this factor, the Court must consider whether this lawsuit would bear on the kind of "sensitive and highly personal" information about Plaintiff or other individuals that can weigh in favor of pseudonymity. In re Sealed Case, 971 F.3d at 326–27 (citation omitted) (listing as examples "sexual activities," "medical concerns," or "identity of abused minors").

15.     As alleged in 1:25-cv-1229, Plaintiff is seeking damages for and suffered, inter alia, traumatic brain injury, symptoms of chronic traumatic encephalopathy including anterograde amnesia, legal blindness, issues with comprehension and other physical ailments. Defendants are powerful, violent, and lawless under the guise of lawfulness in abuse of power. Plaintiff should not be judged, embarrassed, humiliated, scorned, or taken advantage of by others in perpetuity for these disabilities that the plaintiff has painstakingly practiced making less apparent to the world seeking "life, liberty, and the pursuit of happiness" as enshrined in the Declaration of Independence. Defendants should not reap the benefits of their conduct in the very proceeding in which it is challenged. While medical records can be independently sealed, the disclosed injury cannot.

## FACTOR 2

**[2] Identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties**

16.     Although these attacks transpired in prison, defendants knowingly illegally maintain "probation" custody pursuant to a void order, have committed hundreds of unlawful acts to conceal that conduct and the act of violence in judicial, investigative, quasi-judicial, administrative and other type proceedings and, have already threatened the plaintiff's family for complaining in the beginning, causing a chilling effect upon further complaints. Defendants threatened the plaintiff's father stating, "if you're lying, we're going to come down there and arrest you". Plaintiff was transferred 5 times in 4 years to different prisons because of the retaliation. Every assertion of a constitutional right was met with retaliation whether illegal or under color of law even though void orders do not affect, impair, or create any legal rights, including a legal claim limiting where, when, and the procedure in which challenged. Case in point, defendants and witnesses Kelly and Nichols refuse to recuse and proliferate the threat, submitting factual and legal defenses under guise of judicial function.

17.    Moreover, to the extent that the violence was exacted in prison by white supremacist gang members solicited by the defendants has no bearing on the threat as there are more white supremacist gang members outside of prison walls.

18.    Most recently at least 23 migrants of color that we know of have died in defendants' unmonitored custody, at least 170 U.S. citizens of color that we know of have been illegally kidnapped by defendants under the Supreme Court's recent determination in Vasquez Perdomo v. Noem that ONLY white citizens should not be racially profiled, defendants are executing people of color (boat strike victims) entitled to the presumption of innocence without due process of law (docs 17-28 and 29 1:25-cv-1229). And when faced with these clearly racist acts under guise of official conduct, defendants Kelly and Nichols and an unknown clerk illegally alter the record in 1:25-cv-1229 to CONCEAL that which is subject to public scrutiny.

19.    Defendants in judicial proceedings have boldly, inter alia, granted immunity to other defendants for attempted murder, abolished the double jeopardy, equal protection, due process, and supremacy clauses, operated to spoliate evidence, and astonishingly ruled inconsistently in the Asian American plaintiff's cases with the

law as determined in the cases of similarly situated white persons before, during and after the plaintiff's assertion of rights, without expressing the violation of the fundamental law on record. The plaintiff was already illegally "disappeared" for 4 years by the defendants.

20.        As stated in the 1:25-cv-1229, the defendants' "project 2025" policy of governance and jurisprudence, intended to abolish the operational existence of the Constitution is not new and has been effectuated in the plaintiff's home state of Xxxxxxx for at least 10 years. The plaintiff will remain in danger for years to come especially in an environment in which the defendants made it "o.k."  to hate. Defendants already attempted "doxxing" the plaintiff.

https://www.americanprogress.org/article/project-2025-is-already-a-reality-in-many-states/

https://www.americanprogress.org/article/fact-sheets-the-harmful-effects-of-project-2025-by-state/

https://democracyforward.org/the-peoples-guide-to-project-2025/underway-in-the-states/

https://www.tallahassee.com/story/news/politics/elections/2024/07/29/proje
ct-2025-shares-goals-xxxxxxx-gov-ron-desantis/74584842007/

https://www.project2025.org/news/press-releases/david-dewhirst-senior-
advisor-to-xxxxxxx-gov-ron-desantis-joins-project-2025/

https://www.xxxxxxxdems.org/2024/08/12/what-theyre-reading-rick-scott-is-
fully-behind-project-2025/

https://www.xxxxxxxdems.org/2024/07/31/icymi-rick-scott-has-deep-ties-to-
project-2025-leaders/

https://www.americanbridgepac.org/icymi-rick-scotts-fingerprints-are-all-
over-project-2025/

https://thedemlabs.org/2024/08/23/project-2025-builds-on-rick-scotts-11-
point-plan/

## FACTOR 3

**[3] The ages of the persons whose privacy interests are sought to be
protected**

21.    There are no minors personally known to the primary plaintiff

directly involved. But plaintiff has a large family in all parts of the

country with many minors as members. The risk of danger exists to both immediate and non-immediate family members.

22.    However, the plaintiff has incorporated the factual bases of all pending litigation against these same defendants which include minors. It appears that their identities are protected in those cases.

23.    Additionally, while F.R.C.P. 5.2 specifically mentions minors, it concerns the plaintiff that the rule does not consider the elderly or disabled. The plaintiff does have elderly parents and is disabled. While not true in all cases, the mental capacity of minors, the elderly and the disabled may require the same consideration as is the case here.

**FACTOR 4**

**[4] The action is against both a governmental and a private party relatedly**

24.    Anonymous litigation can also be appropriate when a plaintiff sues the government seeking "individualized relief." Doe v. PCAOB,

*2024 WL 3954189*, at *3–4 (D.D.C. Aug. 2, 2024); see Doe v.

Blinken, No. 24-1629, ECF No. 3 (Mem. Op.) at 4–5 (D.D.C. June 11,

2024). And that is indeed in large part Doe's aim as he also seeks

damages for his injuries.


## FACTOR 5

**[5] The risk of unfairness to the opposing party from allowing an**

**action against it to proceed anonymously is self-inflicted**

25.        The facts of the case outline defendants' declaration of war

against the Constitution. Defendants have no plans to comply with

the law, but instead to weaponize the plaintiff's and court's loyalty to

the Constitution against them as already done for 10 years as alleged

in the complaint pursuant to the white supremacist project 2025

policy. Again, case in point, Kelly's and Nichols conduct in 1:25-cv-

1229 confusing power and competence.

26.        There is a strong presumption that defendants engaged in

threats and fear mongering to prevent adverse litigation even before

litigation commenced. There is a strong presumption defendants

planned for adverse attorney represented pseudonym litigation. It is

unlikely defendants prepared for pro se adverse pseudonym litigation. It is unlikely defendants prepared for a 10-year history of their project 2025 policy implementation to be demonstrated in any case because the plaintiff survived and can rightfully plead these facts. It is unlikely defendants prepared for standing to wholesale challenge the overarching policy project 2025 and their authority to implement it, even though they prepared for the isolated and narrowed challenges stemming from it. This makes this plaintiff a grave threat and in the most danger of retaliation. Plaintiff is also concerned with the safety of this court, its staff, and their families because of the nature of the case. Nevertheless, defendants including anew Kelly and Nichols, invoked their plan to impermissibly and unlawfully interfere with meaningful access, due process, equal protection and prevent contests to their conduct by choice and counsel of professional attorneys. This type of misconduct would be subject to the most severe sanction in any proceeding including adverse judgement, in particular when their misconduct under guise of judicial functions have proliferated murder, kidnapping and sexual assault.

27.    There is common sense in a "pro se" party possibly causing their own risk of unfairness by mistake or inadvertence or the lack of

skill of a professional attorney. There is no unfairness to a party whose conduct is intended to prevent the assertion of Constitutional rights. The defendants' insurrection never ended, is ongoing from the inside of government, and the plaintiff has a right to seek redress without the insurrection showing up at his front door. Spanning a decade and HUNDREDS of patterned systemic acts, Plaintiff was already kidnapped, been the victim of violence, had his ability to complain interfered with, and will be illegally "disappeared" by lawless government official defendants without the protection of non-disclosure. Plaintiff has no other reasonable method of protection, and defendants can merely eliminate the threat imposed under guise of the 1st amendment and demonstrate a firm compliance with law as interpreted by the courts. They will not as they have not for a period of at least 10 years. Case in point, Kelly and Nichols in 1:25-cv-1229 interfere and proliferate the threat against this plaintiff.

28.    It is common knowledge that the defendants engage in an active, ongoing formulation of threats of violence against judges, lawyers, law firms, litigants, political opponents, and the general public who oppose their conduct.

29.     It is simply criminal and sanctionable behavior to threaten litigants, judges, witnesses and, other parties involved with judicial proceedings. There are numerous federal cases where parties have been sanctioned for threatening witnesses. Federal law, specifically 18 U.S.C. § 1512 and § 1513, criminalizes such behavior, and sanctions can range from fines to imprisonment.  18 U.S.C. § 1503 prohibits influencing or injuring a judge or juror.  This statute criminalizes efforts to influence, intimidate, or impede jurors, officers of the court, or other individuals in the administration of justice. Threats can fall under this section.

30.      This honorable court speaks carefully and with intent. Every single word matters. This is time tested and is understood by every professional in government. The words of the president matter. The words of a candidate matter. The words of every government official matter. The words of the C.E.Os. matter. The words of the Pope matter. The words of the media matter. The world witnessed that Donald Trump's words resulted in an insurrection on January 6th, 2021.

31.     The words of powerful people matter. For the same reasons this court chooses its words with skill, candor, authority, clarity, and

carefully, the weight of the words of the defendants requires overabundance of those factors and more. Defendants lack these skills and in fact abuse the 1st amendment to effectuate the live ongoing threat against their opposition. You don't have to use a specific word normally associated with violence to effectuate it and this is what the defendants have done and continue to do. While the first amendment normally protects speech that does not contain words normally associated with violence, the weight of a false narrative heard by thousands or millions designed to enrage the low informed is heavy as the world witnessed on January 6th, 2021.

32.     Courts of review rely upon a notion of "what a reasonable juror" or person would do. But we are not dealing with reasonable people. Defendants are only concerned with abuse of their own Constitutional rights to violate the Constitutional rights of others as Kelly and Nichols have implemented in 1:25-cv-1229. Judiciary like Kelly and Nichols prey on the policies of respect of other judges of this very court and Americans, like this plaintiff are caught in between.

33.     To the extent the motion for T.R.O. requires disclosure of the plaintiff's identity, that disclosure is requested to be to specified defendants as necessary to effectuate the T.R.O. as the request also

requires those specific defendants NOT disclose identifying matters to the other defendants.

34.      In support of granting this motion, plaintiff incorporates the casefile in 1:25-cv-1229.

35.      The court should grant the plaintiff the right to proceed under pseudonym as granted in 1:25-cv-1229.

## B. PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

36.      Indeed, the defendants enjoy flouting the Constitutional rights of people of color, and the primary plaintiff is in fear of retaliation for bringing this lawsuit reliant upon a prior knowingly void judgement entered by the defendants. Defendants refuse by illegal and unconstitutional methods engaged by project 2025 loyalists, including violence, to declare the judgement void over 166 times and again in 1:25-cv-1229.

37.      To the extent that a void judgement is challenged, the principle established in Old Wayne Mutual Life Association v. McDonough, 204 U.S. 8 (1907), remains valid law, stating that a void judgment or order can be challenged in any court.

38.    Void judgements may be challenged at any time.

39.    Because a void judgment is a nullity, there's no interest, except those that are unconstitutional, in upholding its finality, as it doesn't affect, impair, or create any legal rights, including a legal claim limiting the procedure in which challenged.

40.    A void order, which lacks a fundamental element of validity, can be challenged in any jurisdiction, at any time, because it is considered a nullity and never truly existed.

41.    Defendants knowingly interpret state and federal jurisdictional law, to evade their complete lack of subject matter jurisdiction, to illegally kidnap, detain, and make powerless to defend against acts of violence they solicit of white supremacist gang members upon the plaintiff and similarly situated persons of color.

42.    In 1:25-cv-1229 plaintiff sought to enjoin defendants of implementing the Project 2025 policy since 04/15/25, and the honorable Judge Boasberg recognized the urgency in issuance of the minute order granting the prior pseudonymity motion. Because of Kelly's and Nichols interference, people of color have been kidnapped and murdered in abuse of power.

43.     As stated in the complaint, the primary plaintiff is already permanently disabled as a result.

44.     Defendants refuse to declare the order void thus Plaintiff is illegally detained in violation of the U.S. Constitution pursuant to the project 2025 policy.

45.     Defendants enjoy "flouting the Constitution" against people of color. The plaintiff is an Asian American natural born U.S. citizen.

https://www.cbsnews.com/news/doj-argues-judge-cant-order-return-of-kilmar-abrego-garcia/

46.     The matters of the unconstitutional custody were before the U.S. District court for the middle district of Xxxxxxx in x:xx-cv-1017 regarding Xxxxxxx State Court judgement and sentence in xxxx-cf-5231 in which the respondents had already entered judgement and sentence against the Plaintiff /Petitioner  for the alleged "Scheme to defraud" under Xxxxxxx statute xxx.034  in xxxx-cf-1833 in violation of the Double jeopardy clause and lacking subject matter jurisdiction. xxxx-cf-1833 was res judicata. Edwards v. Vannoy, 141 S. Ct. 1547, 209 L. Ed. 2d 651 (2021).

47.    The court in x:xx-cv-1017 suspended the privilege of the writ,

without jurisdiction to do so, rendering it's order denying the petition

with prejudice void, instead of required dismissal (Slack v. McDaniel,

529 U.S. 473, 120 S. Ct. 1595 (2000) ; (Rose v. Lundy, 455 U.S. 509,

102 S. Ct. 1198 (1982) holding that district courts ordinarily must

dismiss a § 2254 petition without prejudice if the petitioner has not

exhausted his state postconviction remedies, but contemplated that

the prisoner could return to federal court after the requisite exhaustion,

and that such petition is not successive, by denying the 1st petition

alleging that the petitioner did not exhaust his claims on appeal and

by post-conviction motion when he did, by alleging that the petitioner

did not raise the lack of subject matter pursuant to Xxxxxxx rule of

appellate procedure x.xxx(b)(2)(A)(ii)a. and e. ,when he did, by

alleging that the petitioner did not preserve his claims on direct

appeal when he did, and that the petitioner would be procedurally

barred from returning to state court to exhaust the claims, when in

fact the petitioner did return to state court, exhausted the claims

again in other post-conviction, appeal, and original writ proceedings

which are the subject judgements before the court now. See U.S.

Constitution Article 1, section 9, Clause 2 (The Privilege of the Writ of

Habeas Corpus shall not be suspended, unless when in Cases of

Rebellion or Invasion the public Safety may require it.)

48.     THE WORDS "LACK OF SUBJECT MATTER JURISDICTION"

APPEAR NO WHERE IN 166 ORDERS, STATE AND FEDERAL.

49.     Defendants care less that new judgement in XXXX-3869 arising

from a new judgement in xxxxcf5231 was challenged and that courts

have an independent duty, in every proceeding to determine its

subject matter jurisdiction, which cannot be waived. Magwood v.

Patterson, 561 U.S. 320, 130 S. Ct. 2788, 177 L. Ed. 2d 592 (2010).

50.     Courts in Xxxxxxx, the Federal District Court, and the Circuit

Court of Appeals have an independent duty to determine its own

subject matter jurisdiction, and the subject matter jurisdiction of the

court that entered the judgement reviewed, even if none of the parties

raise the issue. Hertz Corp. v. Friend, 559 U.S. 77, 130 S. Ct. 1181,

175 L. Ed. 2d 1029 (2010). They have failed to do so. Orders entered

without subject matter jurisdiction are void.

51.     The Project 2025 policy is unconstitutional and thus provides its

loyalists no right to infringe upon the Constitutional immunities of the

plaintiff. As a result of implementation of the Project 2025 policy

complained of in 1:25-cv-1229, not one single order out of hundreds

address the "lack of subject matter jurisdiction" to purpose the

ongoing kidnapping and ongoing threat of violence.

52.　　An appellate court's orders are generally considered void if it

fails to address or determine the lower court's lack of subject matter

jurisdiction, as this is a fundamental issue that can be raised at any

time and cannot be waived. Ruhlen v. Holiday Haven Homeowners,

Inc., — F.4th —- (2022), 2022 WL 701622 (xxxxCir. Mar. 9, 2022),

City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 138 (2d

Cir. 2011); Fafel v. Dipaola, 399 F.3d 403, 409–10 (1st Cir. 2005); see

Chambers v. Armontrout, 16 F.3d 257, 260 (8th Cir. 1994) ("[R]elief

from void judgments is not discretionary."); V.T.A., Inc. v. Airco, Inc.,

597 F.2d 220, 224 n.8 (10th Cir. 1979) (noting that if a judgment is

void, then a Rule 60(b)(4) motion must be granted).

53.　　The judgements in question are void for other reasons under

the Constitution of the United States, where the Constitutional

guarantees are reduced to discretion, relied upon statutes are void on

their face, as interpreted and as applied.

54.　　In at least 166 proceedings, the defendants flouted the

Constitution by entering new void orders. Void for relying upon a prior

void for lack of subject matter jurisdiction order and void for granting

or denying relief wholly outside of the pleadings. Defendants violate the fundamental law without expressing the violation on record.

55. Judgements, sentences, and orders entered without subject matter jurisdiction, or without determination of the reviewed court's lack of subject matter jurisdiction or granting or denying relief wholly outside of the pleadings must be declared void. They are void even before being challenged.   See MOL HUNGARIAN OIL AND GAS PLC v. REPUBLIC OF CROATIA Dist. Court, Dist. of Columbia, 2025 " a "judgment of a court in one State is conclusive upon the merits in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment." (quoting *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982)). Accordingly, courts "may inquire into the jurisdictional basis of [a] foreign court's decree" and "need not" give full faith and credit if "that court did not have jurisdiction." *Underwriters*, 455 U.S. at 705.

56.     Injunctive relief must be granted. Plaintiff has a right to be protected from "trickle-down" government discrimination.

57.     Constitutional guarantees must not be reduced to discretion.

58.    Unconstitutional policies like project 2025 must be declared so at the conclusion of this case, as its objective is in part to flout the constitutional rights of people of color.

59.    Project 2025 is an unconstitutional policy implemented in Republican controlled areas of the country.

https://static.project2025.org/2025_MandateForLeadership_FULL.pdf

60.    In Xxxxxxx, this unconstitutional policy places unconstitutional conditions upon litigation involving people of color by "catch and kill" scheme. The plaintiff petitioner is an Asian American native-born citizen.

61.    For nearly a decade, the plaintiff petitioner has been denied every Constitutional protection including but limited to Equal Protection, Due process, meaningful access to the courts for redress of grievances, the Double Jeopardy clauses, and more. Pursuant to the project 2025 policy, loyalists to white supremacy are placed in power whenever possible. They violate the fundamental law without expressing the violation on record.

62.    In the State of Xxxxxxx, the courts are overwhelmed with loyalists.

63.　　　As a result, Constitutional guarantees like meaningful access are reduced to discretion, by knowing inconsistent determinations in the cases of this Asian American litigant as determined as law in the cases of sufficiently similarly situated white persons. In operation of this catch and kill scheme, trial courts knowingly enter such decisions, reducing Constitutional guarantees to the discretion of whether an appellate court will write an opinion, alter the narrative, or accept jurisdiction. They violate the fundamental law without expressing the violation on record.

64.　　　Xxxxxxx courts can "disappear" your claim by knowing unelaborated or manipulated narrative conflict decisions having so acted in the plaintiff petitioner's cases. As a result, data of discrimination is eliminated. Pre-civil rights era discrimination has never ended. White supremacists just became cleverer in how they discriminate. The true body of progressive law of the United States lies not in the approximately 80 cases per year considered by the Supreme Court but instead lies in the approximately 8000 cases per year NOT reviewed by the Supreme court, because cases like these plaintiffs are CONCEALED by scheme.

65.    As stated in the complaint the plaintiff has faced violence, is permanently disabled as a result and, the defendant judiciary, executives, and agencies acted swiftly to conceal.  The defendants' Project 2025 policy places no limit to misconduct of officials who swear loyalty to white supremacy over the Constitution, as loyalists view people of color as lower classes of people. The plaintiff lies in an ONGOING state of fear without a VALID court order to complain to authorities.

66. A judge cannot, even in secret, implement the white supremacist project 2025 policy loyalty requirements and provisions of the Constitution at the same time in the execution of official duties without committing treason against the constitution. This concept is famously articulated in a statement by Chief Justice John Marshall: "We have no more right to decline the exercise of jurisdiction, which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution". Marshall v. Marshall, 547 U.S. 293 (2006) citing Cohens v. Virginia, 6 Wheat. 264 (1821).

https://www.axios.com/2025/01/22/trump-s-loyalty-test-pm

67.    The underlying gravamen as to the requested relief for restraint to allow the plaintiff to litigate without retaliation is, that the

petitioner is illegally detained in violation of the United States and

Xxxxxxx Constitutions, still in custody pursuant to 20 years of

probation (Duvallon v Xxxxxxx 691 F. 2d 483 - Court of Appeals,

xxxxCircuit, 1982 ),distinctly on grounds of double jeopardy, distinctly

where a pretrial motion to dismiss (USCAXX xx-xxxxx doc12 p28) on

such grounds was submitted and denied, and distinctly a matter of

"lack of subject matter jurisdiction" but only as a result of

implementation of the Project 2025 policy.

68.      Again, Courts in Xxxxxxx, the Federal District Court, and the

Circuit Court of Appeals have an independent duty to determine its

own subject matter jurisdiction, and the subject matter jurisdiction of

the court that entered the judgement reviewed, even if none of the

parties raise the issue. Hertz Corp. v. Friend, 559 U.S. 77, 130 S. Ct.

1181, 175 L. Ed. 2d 1029 (2010). They have intentionally failed to do

so. Orders entered without subject matter jurisdiction are void. Orders

granting or denying relief wholly outside of the pleadings are void.

69.      Indeed, on page 5 of the U.S. District for the Middle District of

Xxxxxxx court order (x:xx-cv-1017 doc 134 p5, 2213998 doc12 p74),

the court states "Petitioner argues in claim 3 that his convictions

violate double jeopardy". It appears the court of appeals failed to

determine its subject matter jurisdiction as its own independent duty
or based on the grounds raised by the plaintiff petitioner. Instead of
addressing the claim as distinctly a matter of a violation of the double
clause, distinctly a matter of lack of subject matter jurisdiction , and
distinctly a matter of the trial court error in denying the pretrial motion
to dismiss on double jeopardy grounds (USCAXX xx-xxxxx doc12
p28) , the court of appeals knowingly misconstrued the claim only as
"trial court error concerning the denial of a pretrial motion", and did
not consider facts from the other grounds, as intended and requested
by the petitioner, however inexpertly pleaded. (USCAXX xx-xxxxx doc
14-2 p2), violating the fundamental law without expressing the
violation on record.

70.     The district court, in regard to the claims, improperly alleged
"they were not presented to the xxx DCA on direct review or collateral
review", "although petitioner filed a direct appeal, his appeal was
dismissed  because he entered a nolo contendere plea and did not
preserve any claims for appeal, nor did he move to withdraw his
plea" . The xxx DCA order was unelaborated, thus the district judge
could not determine cause for dismissal. (USCAXX xx-xxxxx doc 15

p39) A plain procedural bar must be present and was not. Slack v.

McDaniel, 529 U.S. 473, 120 S. Ct. 1595 (2000).

71.      Pursuant to Xxxxxxx rule of Appellate procedure

x.xxx(b)(2)(A)(ii), the petitioner may and did appeal in XXXX-0912 a.

the lower tribunal's lack of subject matter jurisdiction, and e. as

otherwise provided by law. And despite counsel's forced and

schemed ineffectiveness in the trial court, plaintiff petitioner did

indeed reserve the right to appeal the denial of his pretrial motion to

dismiss on res judicata and double jeopardy grounds. (USCAXX xx-

xxxxx doc12 p28 and p50).

72.      The claims of Double Jeopardy, Fundamental Error, Lack of

Subject Matter Jurisdiction in pleading appear, however inexpertly,

but still sufficient to be liberally construed, multiple times in the xxx

DCA direct appeal initial brief and reply brief, multiple times in the

petition in the District Court, and in the Post Conviction Proceedings.

Erickson v. Pardus 551 US 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 -

Supreme Court, 2007 A document filed pro se is "to be liberally

construed," *Estelle,* 429 U.S., at 106, 97 S.Ct. 285, and "a *pro se*

complaint, however inartfully pleaded, must be held to less stringent

standards than formal pleadings drafted by lawyers," *ibid.* (internal

quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). Claims of lack of subject matter may be raised at any time, even in a reply brief on direct appeal.

73.    Indeed, the petitioner, was forced to enter an open or general plea of nolo contendere, not a plea bargain, after denial of the pretrial motion to dismiss on double jeopardy and res judicata grounds believing that the appellate court will correct the fundamental error by judicial bullying of the trial judge (USCAXX xx-xxxxx doc12 p28, 51). The Plaintiff had no knowledge of the project 2025 policy at the time and didn't believe his then 3rd attorney who told him that the white government officials would discriminate and hinted that he was powerless.

74.     As provided by law in Xxxxxxx, "The general rule is that a plea of guilty and subsequent adjudication of guilt precludes a later double jeopardy attack on the conviction and sentence. United States v. Broce, <u>488 U.S. 563, 569</u>, <u>109 S.Ct. 757, 762</u>, <u>102 L.Ed.2d 927</u> (1989). There is an exception to this general rule when (a) the plea is a general plea as distinguished from a plea bargain; (b) the double jeopardy violation is apparent from the record" and (c) there is

nothing in the record to indicate a waiver of the double jeopardy

violation." Novaton v. State, 634 So. 2d 607 (Xxx. 1994).

See also Edwards v. State, 268 So. 3d 849 (Xxx. Dist. Ct. App. 2019)

"We note at the outset that Edwards entered an open plea of nolo

contendere to both charges without reserving his right to appeal on double

jeopardy grounds. However, where a plea "is a general plea," a double

jeopardy violation "is apparent from the record," and "there is nothing in the

record to indicate a waiver" of the violation, the issue may be addressed on

appeal.

75.    In Xxxxxxx, fundamental error is an exception to the rule that

issues cannot be raised for the first time on appeal. It allows an

appellate court to consider an error without objection in the lower

court. The doctrine of fundamental error is used in rare cases when a

jurisdictional error occurs or when justice demands it. It's also used to

correct mistakes or omissions at trial when an objection would not

have been possible, and to preserve the public's confidence in the

judicial system. The "fundamental error" doctrine is an exception to

the rule that issues cannot be raised for the first time on appeal. *See*

*Castor v. State*, 365 So. 2d 701, 703 (Xxx. 1978).   "'Fundamental

error,' which can be considered on appeal without objection in the

lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action." Sanford v. Rubin, 237 So. 2d 134, 137 (Xxx. 1970). In criminal law, fundamental error is "error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error," or "error so prejudicial as to vitiate the entire trial." *Rutherford v. Moore*, 774 So. 2d 637, 646 (Xxx. 2000).

76.     The United States Supreme Court has held that the right not to be twice placed in jeopardy is "fundamental," Benton v. Maryland, 395 U.S. 784, 794-96, 89 S.Ct. 2056, 2062-63, 23 L.Ed.2d 707 (1969), and that the primary purpose of the double jeopardy clause "is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." Robinson v. Neil, 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973). See Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

77.     Next, the trial court cannot obtain jurisdiction it has not by erroneous decision. English v. McCrary, 348 So. 2d 293 (Xxx. 1977). When the trial court impermissibly denied the pretrial motion to dismiss, it did not obtain subject matter jurisdiction it had not.    A

claim of lack of subject matter jurisdiction can be raised at ANYTIME. (See  See *Virginia v. State*, No. XXXX-0256 (Xxx. Dist. Ct. App. Oct. 13, 2023) (...this Court has explained that a lack of subject matter jurisdiction can be raised at any time. *Wardell v. State*, 944 So.2d 1089, 1091 (Xxx. xxx DCA 2006); *see also Davis v. State*, 998 So.2d 1196 (Xxx. 1st DCA 2009); *Gunn v. State*, 947 So.2d 551 (Xxx. 4th DCA 2006); *Harris v. State*, 854 So.2d 703 (Xxx. 3d DCA 2003). *Cesaire v. State*, 811 So.2d 816, 817 (Xxx. 4th DCA 2002) ("[A]n order entered without subject matter jurisdiction is void.").   *See GUNN v. STATE*, 947 So. 2d 551 (Xxx. Dist. Ct. App. 2007) citing *Brown v. State*, 917 So.2d 272 (Xxx. xxx DCA 2005) (reversing summary denial of rule x.xxx motion, and holding that the trial court was required to address the merits of defendant's motions for postconviction relief where they raised jurisdictional issues that were not previously raised, as a void judgment may be collaterally attacked at any time). *Spaulding v. State*, 965 So. 2d 350 (Xxx. Dist. Ct. App. 2007) citing Gunn ("a trial court should review the merits of a postconviction motion, even if untimely, which raises a jurisdictional issue that was not previously considered on the merits").

78.    As to the issue of whether the claims were raised in the form of a postconviction motion, they were in Xxxxxxx 9th Judicial Circuit case xxxx-ca-7914 (USCAXX xx-xxxxx doc 12 p70). The district court made note of this filing in its order in companion case x:xx-cv-1016.

79.    The exact same petition, verbatim, was submitted to the Xxxxxxx Supreme Court. The Xxxxxxx Supreme court transferred that petition to the trial court, for consideration under rule Xxxxxxx Rule of Criminal Procedure x.xxx. at that time, the trial court was the highest state court available to the petitioner, because the appellate court barred the petitioner from further pro se filings, after improperly dismissing the direct appeal of the same claims, despite having an independent duty to determine the lack of subject matter jurisdiction of the trial court. Plaintiff had no knowledge of the Project 2025 policy at that time.

80.    The U.S. District for the Middle District of Xxxxxxx continued down the deceptive path in evasion of the lack of subject matter jurisdiction and alleged that the petitioner's reliance upon Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), did not apply because he improperly alleged that this petitioner did not file a rule x.xxx motion, when he did. Petitioner had no counsel during the

post-conviction proceeding and had no knowledge of the project 2025 policy complained of.

81.     Although somewhat irrelevant where the district court evaded its independent duty to determine the subject matter jurisdiction of the court reviewed and its own, there has been some change to the Martinez holding in Shinn v. Ramirez, 142 S. Ct. 1718 (2022). It also appears irrelevant here as the issues were raised on direct appeal, but improperly dismissed, and the distinctly a matter of a violation of the double clause, distinctly a matter of lack of subject matter jurisdiction , and distinctly a matter of the trial court error in denying the pretrial motion to dismiss on double jeopardy grounds, are pure questions of law, that don't require an evidentiary hearing in part, and in part contains the record proper regarding the motion to dismiss.

82.      Defendants continued in flouting the Constitution.

83.     The underlying gravamen claim was "fairly presented" to the state courts. Ward v. Hall, 592 F.3d 1144 (xxxxCir. 2010). Reasonable jurists would find the district court's determination incorrect, that the Constitutional claims in the 2254 petition were unexhausted and procedurally defaulted, because they were fairly presented. Pursuant to the Project 2025 policy, the district court

applied the incorrect law to violate the fundamental law without

expressing the violation on record. "A state procedural bar is based on

an adequate state procedural rule if that rule is "firmly established and

regularly followed — that is, not applied in an arbitrary or

unprecedented fashion." Lynd v. Terry, 470 F.3d 1308, 1313 n. 4

(xxxxCir. 2006).

84.     The petitioner did preserve his matters for appeal, (USCAXX

xx-xxxxx doc 12 p51), but this is not required.

85.      The Xxxxxxx court of appeals dismissal was improper because

the appeal was authorized under Xxxxxxx Rule of Appellate

Procedure x.xxx(b)(2)(A)(ii) a. and e. Alternatively, the 5th District

Court of Appeals order was unelaborated, leaving no cause for

dismissal.

86.     To the extent the xxxx Circuit U.S. court of appeals alleged

most recently that there are no avenues available in furtherance of

the scheme to flout the constitutional rights of this Asian American

plaintiff, this is incorrect, as a claim of lack of subject matter

jurisdiction can be raised at ANYTIME and the orders entered lacking

subject matter jurisdiction and entered without determining the

subject matter jurisdiction of the court being reviewed are void. (See

Virginia *v. State*, No. XXXX-0256 (Xxx. Dist. Ct. App. Oct. 13, 2023).

See JACK H. FRIEDENTHAL ET AL., CIVIL PROCEDURE § 2.1, at 9 (5th

ed. 2015) ("When deciding where to file suit one of the first questions that

must be answered is whether the chosen court has the power or

competence to decide the matter to be adjudicated. This requirement most

often is stated in terms of whether the court has subject-matter jurisdiction

over the dispute and should be distinguished from questions of personal

jurisdiction, which focus on the court's authority to enter a judgment that is

binding on the particular defendants involved." (footnote omitted)).  See,

e.g., Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 562 (2017) ("A

court must have the power to decide the claim before it (subject-matter

jurisdiction) and the power over the parties before it (personal jurisdiction)

before it can resolve a case."); see also 2 RESTATEMENT (SECOND) OF

JUDGMENTS § 1 cmt. a, at 30 (AM. LAW. INST. 1982) ("A fundamental

element of procedural fairness is that a tribunal presuming to adjudicate a

controversy have legal authority to do so. One aspect of the question of

authority is whether the tribunal is empowered to adjudicate the type of

controversy that is presented. This is conventionally referred to herein, as

the question of subject matter jurisdiction."). See, e.g., Louisville &

Nashville R. Co. v. Mottley, 211 U.S. 149, 152-53 (1908) (holding that the defense of lack of subject-matter jurisdiction may be raised by the court sua sponte on appeal, resulting in the dismissal of the action).

## THE DOUBLE JEOPARDY CLAIM

87.     In xxxxcf1833, which was res judicata, the petitioner was sentenced to a state prison sanction followed by 2 years of probation for, inter alia, an alleged scheme to defraud.

88.     Defendants' OVERARCHING policy of governance and jurisprudence entitled "Project 2025" as defined in 1:25-cv-1229 was UNKNOWN to the plaintiff at that time. Nor was he aware of the tampered evidence used to ORCHESTRATE probable cause. Nor did he TIE the prosecution together with his prior WHISTLEBLOWER complaint at that time. Plaintiff, then, did not conceive the possibility that they would try to murder him simply because he was a man of color asserting a constitutional right and protection freely given the white and wealthy.

89.     In xxxxcf5231, the petitioner was sentenced to a state prison sanction for 2 more counts of the same alleged scheme to defraud

followed by 11 years of probation as to one count and 20 years of probation as to the other.

90.    In xxxxcf5231, the court assumed jurisdiction but never had any as the petitioner was already tried, convicted and sentenced for the same alleged scheme to defraud in xxxxcf1833.

91.    xxxxcf1833 was res judicata. The court enhanced the prior sentence by dragging the appellant back into court, and involuntarily charging, trying, and sentencing the appellant again by supplying a new case number to enhance the prior sentence.

92.    Vindictiveness by an entire system under republican governance pursuant to the white supremacist project 2025 policy is an understatement. United States v. Goodwin, 457 U.S. 368 (1982), North Carolina v. Pearce, 395 U. S. 711; Blackledge v. Perry, 417 U. S. 21. Cf. Bordenkircher v. Hayes, 434 U. S. 357. Pp. 457 U. S. 372-380.

93.    In xxxxcf5231 , through prior counsel , the petitioner submitted a pretrial motion to dismiss, in which the court improperly denied by knowingly misapplying " regard to the accusatory pleading or the proof adduced at trial " inconsistently with Xxxxxxx statute 775.021 .( "offenses are separate if each offense requires proof of an

element that the other does not, without regard to the accusatory

pleading or the proof adduced at trial.").

94.     The question of jurisdiction in this case is one of law, in which a

court cannot by an erroneous decision acquire jurisdiction which it

has not, and where the jurisdiction of a court does not depend on a

fact which it is required to ascertain. English v Mcrary 348 So. 2d 293

Xxx. (1977). A clear distinction is drawn between assumption of

jurisdiction to which the court has no legal claim and erroneous

exercise of jurisdiction with which it is invested. State ex rel.

Rheinauer v. Malone, 40 Xxx. 129, 23 So. 575, 576 (1898).

95.     The courts of Xxxxxxx knowingly violated the plaintiff's rights.

As explained by the Xxxxxxx Supreme Court in *Lippman v. State*, 633

So. 2d 1061 (Xxx. 1994), the guarantee against double jeopardy

consists of three protections:

- protections against a second prosecution for the same offense after

  acquittal;

- protections against a second prosecution for the same offense after

  conviction; and

- protections against multiple punishments for the same offense.

96.      "The Double Jeopardy Clause presents no substantive

limitation on the legislature's power to prescribe multiple

punishments, but rather, seeks only to prevent courts either from

allowing multiple prosecutions or from imposing multiple punishments

for a single, legislatively defined offense." *Id.* (*quoting Borges v.

State*, 415 So.2d 1265, 1267 (Xxx. 1982).

97.      As explained by the court in *Valdes v. State*, 3 So.3d 1067,

1076 (Xxx. 2009), "there is no constitutional prohibition against

multiple punishments for different offenses arising out of the same

criminal episode, as long as the Legislature intends such

punishments." (*Citing Hayes v. State*, 803 So.2d 695, 699 (Xxx.

2001).

98.       The petitioner submitted a pretrial motion to dismiss (USCAXX

xx-xxxxx doc12 p28) to the trial court and argued as follows, resulting

in the trial court's affirmative action in denying the accused the rights

guaranteed to him under sections 9 and 11 of the Declaration of

Rights, and Under the U.S. Constitutions double jeopardy clauses

without conflict to , and without need to determine ,the facts already

established by the record.  Such action on the part of the court is in

complete absence or in excess of it's jurisdiction.

99.      The conviction was illegal, and so was the sentence, both

executed in lack of subject matter jurisdiction. xxxxcf1833 was res

judicata. See State V Akins, 69 So. 3d 261 (Xxx. 2011) "In the instant

case, our focus is on the third type of constitutional protection—

protection against multiple punishments for the same offense. This

protection is the genesis for the general rule that once a sentence

has been imposed, the sentencing hearing has ended, and the

defendant has begun to serve his sentence, the sentence may not

thereafter be made more onerous, such as by extending the term of

imprisonment, See, e.g., Troupe v. Rowe, 283 So.2d 857, 859

(Xxx.1973), " which held "This Court has consistently held that a trial

judge in a criminal case may modify the sentence imposed upon a

defendant during the same term of court, but this rule is subject of

course to the constitutional guaranty against double jeopardy. Such

constitutional guaranty is mainly designed to prevent a second

punishment for the same crime. Hence, when a court has imposed a

fine and imprisonment, where the statute only conferred power to

punish by fine or imprisonment, and the fine has been paid, it cannot,

even during the same term, modify the judgment by imposing

imprisonment instead of the former sentence." "Generally, the oral

pronouncement prevails unless the oral pronouncement is in error due to a clerical error such as the calculation of jail credit. "See Martindale v. State, 678 So.2d 883, 884 (Xxx. 4th DCA 1996).

100. The courts of Xxxxxxx had literally hundreds of opportunities to execute its independent duty to determine its lack of subject matter jurisdiction, but because the plaintiff was not white, they refused.

101. The illegal sentence / conviction matter was again brought to the court's attention 1st by pretrial motion to dismiss then by a motion to correct illegal sentence, but the defendants continued refusing to refrain from acting upon the contingencies of the void orders of probation from which the court never had jurisdiction, refusing to address the legislative codification of Blockburger in Xxxxxxx Statute 775.021 which holds as follows.

102. "775.021   Rules of construction. — (1)   The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.

103. (4)(a)   Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt,

shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

104.    (b)   The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are1.   Offenses which require identical elements of proof.2.   Offenses which are degrees of the same offense as provided by statute.3.   Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

105.    Xxxxxxx Statute 775.021 provides that "offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial " " In applying the test set out in the quoted section [775.021], the courts look only to the statutory elements of each offense and not to

the actual evidence presented at trial or the facts as alleged in a particular information." *State v. Carpenter,* 417 So.2d 986, 988 (Xxx. 1982).

106.     And in addition to 775.021 codifying the Blockburger Test , 775.021 also codifies the rule of lenity which states "The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." see Paul v. State, 129 So. 3d 1058 - Fla: Supreme Court 2013 *State v. Burris,* 875 So.2d 408, 410 (Xxx. 2004) (citations omitted). "Words and meanings beyond the literal language may not be entertained nor may vagueness become a reason for broadening a penal statute." *Perkins v. State,* 576 So.2d 1310, 1312 (Xxx.1991); *See* § 775.021(4)(b), Xxx. Stat. (2001). "[T]o the extent that definiteness is lacking, a statute must be construed in the manner most favorable to the accused." 576 So.2d at 1312.

107.     In addition to the illegal conviction, the Xxxxxxx Supreme Court stated that an illegal sentence for purposes of rule x.xxx(a) proceedings is a sentence "that no judge under the entire body of sentencing laws could possibly impose." Wright v. State, 911 So.2d

81, 83 (Xxx.2005) (citing Carter v. State, 786 So.2d 1173, 1178

(Xxx.2001)). Pursuant to this definition, "the illegality must be of a

fundamental nature."

108.    See Martinez v State Xxxxxxx Supreme Court 2017 SC15-

1620 "Noting that the term "illegal sentence" is not defined in the rule,

we have held that to be subject to correction under rule x.xxx(a) a

sentence must be "one that no judge under the entire body of

sentencing laws could possibly impose." Wright v. State, 911 So. 2d

81, 83 (Xxx. 2005) (citing Carter, 786 So. 2d at 1178). Put another

way, "[a] sentence that patently fails to comport with statutory or

constitutional limitations is by definition 'illegal.'" Plott, 148 So. 3d at

94 (alteration in original) (quoting State v. Mancino, 714 So. 2d 429,

433 (Xxx. 1998)

109.    "Where it can be determined without an evidentiary hearing that

a sentence has been unconstitutionally enhanced in violation of the

double jeopardy clause, the sentence is illegal and can be reached at

any time under rule x.xxx." *Hopping v. State,* 708 So.2d 263

(Xxx.1998)

110.    In xxxxcf1833, the petitioner was convicted and sentenced for

an alleged "scheme to defraud". xxxxcf1833 was res judicata.

111.    The definition of "scheme to defraud" is found in Xxxxxxx statute xxx.034(3) (d)   "Scheme to defraud" means a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act.

112.    In xxxxcf5231, the petitioner was involuntarily and illegally charged, convicted, and sentenced again enhancing the prior sentence, two more times, for the same alleged "scheme to defraud". Thus, the petitioner was convicted and sentenced 3 times for the same alleged "scheme to defraud, enhancing the prior sentence by assigning a different case number. Subject matter jurisdiction was lacking in 2016cf5231 to charge, try, convict and sentence the plaintiff again for the same crime in 2016cf1833.

113.    The timeframe for the alleged scheme to defraud in xxxxcf1833 was 11/05/14 thru 05/05/15. The timeframe for scheme to defraud count 1 of xxxxcf5231 was 03/01/15 thru 08/20/15. The timeframe for scheme to defraud count 2 of xxxxcf5231 was 02/01/15 thru 09/30/15.

114.    That different alleged victims were named is immaterial as the statute contemplates "one or more persons". The state of Xxxxxxx knew at the time of filing its information in xxxxcf1833 of who the alleged victims were and the alleged amounts of money alleged ascertained from each.

115.    The statute contemplates that all money obtained, whether from one or more persons, pursuant to the same scheme to defraud are totaled to determine the level of offense. It does not allow for multiple charges for the same alleged scheme to defraud.

116.    See Fl Stat xxx.034(3)(e)3 Amounts of value of separate properties obtained in one scheme to defraud, whether from the same person or from several persons, shall be aggregated in determining the grade of the offense under paragraph (4)(a).

117.    "A scheme to defraud in violation of section xxx.034 is a true continuing offense". See Young v Moore Xxxxxxx Supreme Court 2002 No.  SC00-1106. "We make this determination because we hold, as did the Fourth District in Rosen v. State, 757 So.2d 1236, 1238 (Xxx. 4th DCA 2000), that the crime of scheme to defraud/organized fraud in violation of section xxx.034(4)(a)1 is

actually a true continuing offense under Toussie v. United States, 397

U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).

118.    The language of that criminal statute describes the offense as a

"systematic ongoing course of conduct" and thus, this explicit

language satisfies the Toussie requirement that the statute describes

the nature of the crime such that it is clear that the Legislature

intended that it be treated as a continuing one.    See Toussie, 397

U.S. at 115, 90 S.Ct. 858.

119.    In Rosen, the court determined that the various acts were NOT

all a continuing offense and rationalized "each of these crimes were

separated in time and unrelated to one another. Although there were

similarities, each act arose from slightly different facts". The Rosen

court determined "the last four charges in the information were filed

within the statutory period and are sufficient to support a conviction

for organized scheme to defraud, as provided in section

xxx.034(4)(a)2, Xxxxxxx Statutes. These charges occurred against

Jennifer Sastroredjo from October 1996 to April 1997; against Hope

Smith in August 1997; against Elett Baily from August 1997 to

October 1997; and against Clover Whyte in October 1997. Thus, for

these last four victims, the information filed on February 6, 1998, was well within the statutory period."

120.    In xxxxcf1833 and xxxxcf5231, the alleged crimes were NOT separated in time and overlapped (11/05/14 thru 05/05/15, 03/01/15 thru 08/20/15, and02/01/15 thru 09/30/15). The state alleges that the scheme to defraud in the information of xxxxcf1833 transpired between the 5th day of November, 2014 and the 5th day of May, 2015, that the scheme to defraud count 1 in the information of xxxxcf5231 transpired between the 1st day of March 2015 and the 20th day of August 2015 , and that the scheme to defraud count 2 in the information of xxxxcf5231 transpired between the 1st day of February 2015 and the 30th day of September 2015 .

121.    However Xxxxxxx Statute 775.021 provides that "offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial " " In applying the Blockburger test set out in the quoted section [775.021], the courts look only to the statutory elements of each offense and not to the actual evidence presented at trial or the facts as alleged in a particular information." State v. Carpenter, 417 So.2d 986, 988 (Xxx. 1982)

122.     In the affidavit for arrest warrant in xxxxcf5231, the state

identifies the petitioner as "Xxxxxxxxx Insurance Agent John Doe",

and in the affidavit for arrest warrant in xxxxcf1833, the state

identifies the petitioner as "Xxxxxxxxx Insurance Agent John Doe".

123.     The state indirectly alleges that petitioner gained the trust of

the alleged targeted as elderly victims, as "Xxxxxxxxx Insurance

Agent John Doe" and then allegedly made false or fraudulent

pretenses, representations, or promises or willful representations of a

future act, to obtain property.

124.     However Xxxxxxx Statute 775.021, the Blockburger test,

provides that "offenses are separate if each offense requires proof of

an element that the other does not, without regard to the accusatory

pleading or the proof adduced at trial " " In applying the test set out in

the quoted section [775.021], the courts look only to the statutory

elements of each offense and not to the actual evidence presented at

trial or the facts as alleged in a particular information." State v.

Carpenter, 417 So.2d 986, 988 (Xxx. 1982).

125.     Because the petitioner was already tried and sentenced for the

alleged "scheme to defraud" in xxxxcf1833, the court and prosecution

lacked jurisdiction to vindictively charge , try, convict ,sentence,

enhance the prior sentence, and violate his right to appeal where prejudicial and fundamental errors were alleged, the petitioner again in violation of the Double Jeopardy Clauses, for the same alleged "scheme to defraud" in xxxxcf5231.

126.    Vindictiveness by an entire system under republican governance pursuant to the white supremacist project 2025 policy is an understatement. United States v. Goodwin, 457 U.S. 368 (1982), North Carolina v. Pearce, 395 U. S. 711; Blackledge v. Perry, 417 U. S. 21. Cf. Bordenkircher v. Hayes, 434 U. S. 357. Pp. 457 U. S. 372-380.  "...offenses are separate if each offense requires proof of an element that the other does not, **without regard to the accusatory pleading or the proof adduced at trial**. See Fl. Stat.  775.021(4).

127.    The offenses cannot be separate as the 3 counts of the alleged "scheme to defraud" do not require different elements of proof.

 <u>OTHER DETERMINATIONS OF FACT IN THE DISTRICT COURT ORDER IN CONFLICT WITH BOTH THE ORDER ITSELF AND THE RECORD</u>

128.    On pg 2 of the District Court order, the court alleges petitioner's appeal was affirmed per curiam" and the court on pg 6 the court alleges the appeal was dismissed. The appeal was dismissed without

opinion and was not per curiam affirmed. (USDCMDF x:xx-cv-1017 doc 134, USCAXX 2213998 doc12 p74).

129.    On pg 2 of the District Court order, the court alleges that petitioner filed a rule x.xxx motion and there was an evidentiary hearing and, on page 6 the court says there was no collateral review. There was no order and evidentiary hearing as described, as such the record is devoid of such an order.

130.     There was post-conviction review in the form of a petition, verbatim to the district court petition, submitted to the Xxxxxxx Supreme Court and transferred to the trial court for review under x.xxx, which, at the time was the highest state court available to the petitioner, due to sanctions in the DCA. (both orders attached).

131.    In Xxxxxxx, and Federal law before issuance of a "Spencer Sanction", the merits must be reviewed. Jordan v. State, 760 So. 2d 973 (Xxx. Dist. Ct. App. 2000). Chambers v. Nasco, Inc., 501 U.S. 32 (1991). The merits of the direct review were not reviewed prior to sanction, as the sanction order transpired in a different case, while the appeal was pending.


## THE MATTERS OF THE NEW JUDGEMENT IN STATE COURT

132.    A new post-conviction motion was submitted to the trial court in

xxxxcf5231, and again, the trial court failed to assess its lack of

subject matter jurisdiction, altered the record failing to include the

pretrial motion to dismiss, and altered the narrative of the

proceedings, violating the fundamental law without expressing the

violation on record.

133.    The plaintiff petitioner, again, appealed in xxxx-3869. After,

again, the appellate court failed to assess the lack of subject matter

jurisdiction of the trial court ab initio, the appellate court, again,

entered an unelaborated conflict decision raising the new judgement

before this court now, again violating the fundamental law without

expressing the violation on record.

134.    This appeal raised questions of whether the trial court erred by

determining it had subject matter jurisdiction of the proceedings, to

try, convict, and sentence the appellant a second and third time in a

separate new case, particularly when this claim was raised on direct

appeal, in post-conviction proceedings, and otherwise but was never

addressed.

135.    Appellant alleged, again, that the trial court lacked subject

matter jurisdiction in xxxxcf5231 because the appellant was already

tried, convicted, and sentenced for the alleged "scheme to defraud"

under Xxxxxxx statute xxx.034 2015 in xxxxcf1833 which was res

judicata, in violation of the double jeopardy clauses of the United

States and State of Xxxxxxx.

136.    On rehearing after affirmance without opinion, appellant

reminded the appellate court also had an independent duty to

recognize jurisdictional defect even if neither party raises issue, a trial

court does not have the authority to act without subject-matter

jurisdiction, subject-matter jurisdiction is established via statute, rule,

or constitutional provision, that a lack of subject-matter jurisdiction

can be raised at any time, an order issued without subject-matter

jurisdiction is void *ab initio*, lack of subject-matter jurisdiction cannot

be waived, subject-matter jurisdiction cannot be conferred by consent

or stipulation of the parties and, can be raised *sua sponte* by an

appellate court. *Durie v. Hanson,* 691 So.2d 485, 486 (Xxx. xxx DCA

1997); *84 Lumber Co. v. Cooper,* 656 So.2d 1297, 1299 (Xxx. 2d

DCA 1994) *Ricci v. Ventures Trust 2013-I-H-R by MCM Capital

Partners, LLC*, 276 So. 3d 5, 7-8 (Xxx. 4th DCA 2019), *Strommen v.*

*Strommen*, 927 So. 2d 176, 178-79 (Xxx. 2d DCA 2006); *Synchron, Inc. v. Kogan*, 757 So. 2d 564, 565 n.1 (Xxx. 2d DCA 2000) Solar *Dynamics, Inc. v. Buchanan Ingersoll & Rooney, P.C.*, 211 So. 3d 294, 296 (Xxx. 2d DCA 2017).

137.    Appellant also referenced the following authorities:

*Virginia v. State*, No. XXXX-0256 (Xxx. Dist. Ct. App. Oct. 13, 2023) (...this Court has explained that a lack of subject matter jurisdiction can be raised at any time. *Wardell v. State*, 944 So.2d 1089, 1091 (Xxx. xxx DCA 2006); *see also Davis v. State*, 998 So.2d 1196 (Xxx. 1st DCA 2009); *Gunn v. State*, 947 So.2d 551 (Xxx. 4th DCA 2006); *Harris v. State*, 854 So.2d 703 (Xxx. 3d DCA 2003). *Cesaire v. State*, 811 So.2d 816, 817 (Xxx. 4th DCA 2002) ("[A]n order entered without subject matter jurisdiction is void.").

138.    *See GUNN v. STATE*, 947 So. 2d 551 (Xxx. Dist. Ct. App. 2007) citing *Brown v. State*, 917 So.2d 272 (Xxx. xxx DCA 2005) (reversing summary denial of rule x.xxx motion, and holding that the trial court was required to address the merits of defendant's motions for postconviction relief where they raised jurisdictional issues that were not previously raised, as a void judgment may be collaterally attacked at any time). *Spaulding v. State*, 965 So. 2d 350 (Xxx. Dist. Ct. App. 2007) citing Gunn ("a trial court should review the merits of a

postconviction motion, even if untimely, which raises a jurisdictional

issue that was not previously considered on the merits".

139.     Plaintiff incorporated his stated procedural history and the

records in its entirety from xxxx-3869.

## GROUND B(1)

## THE DISTRICT COURT IMPROPERLY DETERMINED THAT THE

## TRIAL COURT DID NOT LACK SUBJECT MATTER JURISDICTION

140.     Plaintiffs reallege and incorporate by reference the allegations

set forth in each of the preceding paragraphs.

141.     Defendants violate the fundamental law without expressing the

violation on record.

142.      There is absolutely no valid authority providing the trial court

subject matter jurisdiction in xxxxcf5231.

143.     Devoid of explanation it appears, perhaps, that the 6th DCA

relies upon Xxxxxxx Statute xxx.034(4)(c) 2015 as authority granting

subject matter jurisdiction in xxxxcf5231 in violation of the double

jeopardy clauses after judgement and sentence in xxxxcf1833 for the

alleged same scheme to defraud.

144.    Xxxxxxx Statute xxx.034(4)(c) 2015 is unconstitutional on its face as it violates the double jeopardy clauses by alleging authorization for separate judgements and sentences for the same scheme to defraud, a true continuing offense under Toussie v. United States, 397 U.S. 112 (1970), as prohibited by both the Federal and Xxxxxxx Constitutions.

145.    Nonetheless, plaintiff was NOT charged with any count of "communications fraud" for which that section authorizes separate judgements and sentences.

146.    Xxxxxxx and Federal courts will answer questions concerning the unconstitutionality of a statute on its face and grant relief. In Wyche v. State, 619 So. 2d 231 (Xxx. 1993), the Supreme Court of Xxxxxxx granted relief as a matter of public importance.

147.    The Federal same elements test under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) for whether the double jeopardy clauses are violated is codified in Xxxxxxx Statutes 775.021.

148.    Pursuant to the same elements test under State and federal law, multiple charges under xxx.034 2015, even if property is obtained and then "scheme to defraud' is an element of, or is

alternately labeled "organized fraud", violates double jeopardy as all of the elements of the same offenses are identical.

149.       Xxxxxxx Statute xxx.034(4)(c) 2015 is void ab inItio, without voiding the entire statute. An unconstitutional section of a statute doesn't automatically render the entire statute unconstitutional. Courts apply the doctrine of severability, preserving valid parts of the law if they remain functional and consistent with the legislature's intent.

150.     The United States Supreme Court has held that "any statute defining criminal conduct, if declared unconstitutional is void ab initio." U.S. v. U.S. Coin & Currency, 401 U.S. 715, 732-33 (1971); United States v. Johnson, 457 U.S. 537, 550(1982), (recognizing that the Court has relied on void ab initio to invalidate inconsistent prior judgments where its reading of a particular constitutional guarantee immunizes defendant's conduct from punishment); Ex parte Seibold, 100 U.S. 371 (1880) ("an unconstitutional law is void, and is no law").

151.     A statute declared void ab initio — "void from the beginning" — is treated as if it never existed. Jenkins, 772 F.3d at 1097; United States ex rel. Williams, 497 F.2d 337 (2nd Cir.1974) (Supreme Court decision finding abortion statute unconstitutional applied retroactively

to invalidate doctor's conviction). As noted in U.S. Coin, "no circumstances call more for the invocation of a rule of complete retroactivity than when the conduct being penalized is constitutionally immune from punishment." U.S. Coin, 401 U.S. at 724.

152.    Relying on federal constitutional law and principles, the United States Supreme Court "has consistently and without exception recognized an obligation to afford relief to a person convicted under an unconstitutional (void) statute." See e.g., Montgomery v. Louisiana, 136 S.Ct. 718, 730-31 (2016).

153.    Where a conviction is based on an unconstitutional law, that conviction is not only erroneous but is illegal and void and cannot be the legal cause of punishment.

154.    A conviction based on a void statute could not be relied upon in any manner as a facially invalid statute means the state had no authority and the courts never acquired jurisdiction to impose punishment and courts had an obligation to correct the wrongs perpetrated by unconstitutional statute.

155.    The Supremacy Clause, found in Article VI, Clause 2 of the U.S. Constitution, establishes that the Constitution, federal laws made in accordance with it, and treaties made under its authority, are

the "supreme law of the land," taking precedence over conflicting

state laws.  Still, it appears both state and federal law agree.

156.    The Xxxxxxx courts in question, it appears, perhaps, incorrectly

determined that the trial court did not lack subject matter jurisdiction

by relying upon Xxxxxxx Statute xxx.034(4)(c) 2015 as it was

unconstitutional and void ab initio.

157.    To the extent that the respondent did not file a brief in XXXX-

3869, they had a duty to disclose Xxxxxxx Statute xxx.034(4)(c) 2015

and the void ab initio doctrine as adverse authority. Xxxxxxx Rule of

Professional Conduct 4-3.3(a)(3) requires lawyers to be candid with

the court, meaning they must not knowingly fail to disclose legal

authority in the controlling jurisdiction that is directly adverse to their

client's position and not disclosed by opposing counsel.

158.    Appellant incorporated by reference the entire case file in xxxx-

3869.

159.    The trial court lacked subject matter jurisdiction in xxxxcf5231

after appellant was tried, convicted and, sentenced in xxxxcf1833 for

the same alleged scheme to defraud even if property is obtained and

then "scheme to defraud' is an element of, or is alternately labeled

"organized fraud". xxx.034(4)(c) 2015 is unconstitutional and void ab initio.

160.    A void judgment and sentence, especially one rendered by a court without subject matter jurisdiction, violates the Constitution, as it deprives an individual of their liberty or property without due process of law, a fundamental principle guaranteed by the Fifth and Fourteenth Amendments of the Federal Constitution and the Xxxxxxx due process clause. Griffin v. Griffin, 327 U.S. 220 (1946), Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980).

161.    When a court acts without authority, its judgments and orders are considered nullities, meaning they have no legal effect and are not binding. This lack of authority can be a violation of the separation of powers principle enshrined in the Constitution. Marbury v. Madison, 5 U.S. 137 (1803).

162.    The Project 2025 policy has and will cause harm to Plaintiff(s) and similarly situated persons. The Court should declare that the policy project 2025 is unlawful and enjoin any actions taken to implement it. Judgements, sentences, and orders entered without subject matter jurisdiction, or without determination of the reviewed

court's lack of subject matter jurisdiction must be declared void.

Plaintiff must be immediately released from custody, kidnapping and

threat of violence under guise of official conduct, in violation of the

United States and Xxxxxxx Constitutions by the executioners of the

void orders. Injunctive relief must be granted. Plaintiff has a right to

be protected from "trickle-down" government discrimination.

Constitutional guarantees must not be reduced to discretion.

Unconstitutional policies must be declared so.

## GROUND B(2)

## XXXXXXX'S INTERPRETATION AND APPLICATION OF XXXXXXX STATUTE 775.021(1) THE RULE OF LENITY IS UNCONSTITUTIONAL

163.    Plaintiffs reallege and incorporate by reference the allegations

set forth in each of the preceding paragraphs.

164.    As presented in the incorporated by reference case file in its entirety XXXX-3869 in the courts located in Xxxxxxx, the last reasoned opinion as to this claim was the trial court's oral pronouncement of denial of the pretrial motion to dismiss.

165.    The trial court denied the pretrial motion to dismiss on double jeopardy and res judicata grounds by improperly giving "regard to the accusatory pleading". See 775.021 (4)(a) and (b).

166.    The elements of scheme to defraud include more than 1 alleged victim, more than one false or fraudulent pretense, more than 1 misrepresentation, more than 1 promise, more than 1 willful misrepresentation of a future act. See xxx.034(3)(d) 2015. There was more than one of each.

167.    xxx.034(4)(a) contemplates those values of different properties be aggregated to determine the level of offense.

168.    The legislature did not speak in clear and definite language permitting multiplicity based on alleged different acts in furtherance of the same scheme to defraud, specifically different "false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act ", nor that Xxxxxxx could refer to the accusatory

pleading to do so. Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), xxx.034 and, Xxxxxxx Statute 775.021.

169.     In fact, Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) and Xxxxxxx Statute 775.021 forbids it.

170.     Faced with conflicting reasonable interpretations of the statute, the rule of lenity requires that the court choose the one that is to defendants' disadvantage "only when Congress has spoken in clear and definite language." McNally v. United States, 483 U.S. 350, 359-60, 107 S. Ct. 2875, 2881-82, 97 L. Ed. 2d 292.

171.     The rule of lenity is a "venerable," "time-honored interpretive guideline," Liparota v. United States, 471 U.S. 419, 427 (1985), that predates the Constitution and "is perhaps not much less old than [statutory] construction itself." United States v. Wiltberger, 18 U.S. 76, 95 (1820); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 343 (2012) (lenity "reflect[s] the spirit of the common law").

172.     It requires that once other standard interpretive tools have been applied, remaining ambiguity or uncertainty in the scope of criminal statutes must be resolved in favor of defendants. United States v. Davis, 139 S. Ct. 2319, 2333 (2019); see also United States v. Rentz,

777 F.3d 1105, 1113 (10th Cir. 2015) (en banc) ("[I]f [Congress']

directions are unclear, the tie goes to the presumptively free citizen

and not the prosecutor.").

173.    This rule reinforces two vital constitutional principles. See

United States v. R.L.C., 503 U.S. 291, 308–09 (1992) (Scalia, J.,

concurring).

174.    First, it protects due process by "ensur[ing] that criminal

statutes will provide fair warning concerning conduct rendered illegal."

Liparota, 471 U.S. at 427. Because there is no "fair warning" when a

statute fails to use language "that the common world would

understand," McBoyle v. United States, 283 U.S. 25, 27 (1931),

fundamental fairness requires that unclear criminal statutes be

construed against the drafter—i.e., the Government.

175.    Second, the rule of lenity safeguards the separation of powers,

"assuring that the society through its representatives, has genuinely

called for the punishment to be meted out." R.L.C., 503 U.S. at 309

(Scalia, J., concurring). In requiring ambiguous language to be

construed against the government, the rule "strikes the appropriate

balance between the legislature, the prosecutor, and the court in

defining criminal liability." Liparota, 471 U.S. at 427; see also United

States v. Kozminski, 487 U.S. 931, 952 (1988) (lenity "maintain[s] the

proper balance between Congress, prosecutors, and courts").

176.     It ensures that criminal sanctions are established by the branch

of government most accountable to the people, rather than by an

unaccountable bureaucracy or interested prosecutor.

177.      Xxxxxxx's interpretation and application of the rule of lenity as

codified in 775.021(1) is unconstitutional.

178.     The Project 2025 policy has and will cause harm to Plaintiff(s)

and similarly situated persons. The Court should declare that the

policy project 2025 is unlawful and enjoin any actions taken to

implement it. Judgements, sentences, and orders entered without

subject matter jurisdiction, or without determination of the reviewed

court's lack of subject matter jurisdiction must be declared void.

Plaintiff must be immediately released from custody, kidnapping and

threat of violence under guise of official conduct, in violation of the

United States and Xxxxxxx Constitutions by the executioners of the

void orders. Injunctive relief must be granted. Plaintiff has a right to

be protected from "trickle-down" government discrimination.

Constitutional guarantees must not be reduced to discretion.

Unconstitutional policies must be declared so.

**GROUND B(3)**

<u>XXXXXXX'S INTERPRETATION AND APPLICATION OF ARTICLE V</u>

<u>§5(b) OF THE XXXXXXX CONSTITUTION IS UNCONSTITUTIONAL</u>

179.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

180.    Article V§5(b) states "Jurisdiction of the circuit court shall be uniform throughout the state.". As demonstrated above, the circuit courts of the 9th circuit have determined their jurisdiction in xxxxcf5231 differently than every other circuit court of this state more than once. This interpretation and application are unconstitutional.

181.    The U.S. Supreme Court has determined a state's application of state law is unconstitutional, based on the Supremacy Clause and other fundamental constitutional principles like due process, equal protection, and the right to a fair hearing of the 5th, 14th, 6th amendments. The Court's power to strike down state laws that violate the Constitution is established through judicial review, as seen in cases like Marbury v. Madison, 5 U.S. 137 (1803).

182.    The Project 2025 policy has and will cause harm to Plaintiff(s) and similarly situated persons. The Court should declare that the policy project 2025 is unlawful and enjoin any actions taken to implement it. Judgements, sentences, and orders entered without subject matter jurisdiction, or without determination of the reviewed court's lack of subject matter jurisdiction must be declared void. Plaintiff must be immediately released from custody, kidnapping and threat of violence under guise of official conduct, in violation of the United States and Xxxxxxx Constitutions  by the executioners of the void orders. Injunctive relief must be granted. Plaintiff has a right to be protected from "trickle-down" government discrimination. Constitutional guarantees must not be reduced to discretion. Unconstitutional policies must be declared so.

## GROUND B(4)

<u>XXXXXXX'S INTERPRETATION AND APPLICATION OF ARTICLE V §3(b)(3) OF THE XXXXXXX CONSTITUTION AND XXXXXXX RULE OF APPELLATE PROCEDURE 9.030 IS UNCONSTITUTIONAL</u>

183.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

184.    Xxxxxxx courts of appeal have interpreted and applied Article V§(b)(3) and rule 9.030 as a tool to restrict review by unelaborated opinion of the Xxxxxxx Supreme Court and Federal courts, and to retain unlawful custody of the appellant in xxxxcf5231 while the judgements and sentences are void ab initio, subsequent to the circuit court's unconstitutional interpretation and application of Article V§5(b) as demonstrated above. This interpretation and application are unconstitutional.

185.    The U.S. Supreme Court has determined a state's application of state law is unconstitutional, based on the Supremacy Clause and other fundamental constitutional principles like due process, equal protection, and the right to a fair hearing of the 5th, 14th, 6th amendments. The Court's power to strike down state laws that violate the Constitution is established through judicial review, as seen in cases like Marbury v. Madison, 5 U.S. 137 (1803).

186.    The Project 2025 policy has and will cause harm to Plaintiff(s) and similarly situated persons. The Court should declare that the policy project 2025 is unlawful and enjoin any actions taken to

implement it. Judgements, sentences, and orders entered without subject matter jurisdiction, or without determination of the reviewed court's lack of subject matter jurisdiction must be declared void. Plaintiff must be immediately released from custody, kidnapping and threat of violence under guise of official conduct, in violation of the United States and Xxxxxxx Constitutions by the executioners of the void orders. Injunctive relief must be granted. Plaintiff has a right to be protected from "trickle-down" government discrimination. Constitutional guarantees must not be reduced to discretion. Unconstitutional policies must be declared so.

## GROUND B(5)

<u>XXXXXXX'S INTERPRETATION AND APPLICATION OF IT'S SANCTION AUTHORITY AS ELABORATED IN Spencer v. State, 717 So. 2d 95 (Xxx. Dist. Ct. App. 1998) and Xxxxxxx Statute 944.279 ARE UNCONSTITUTIONAL</u>

187.    Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs.

188.    Subsequent to the Xxxxxxx court's unconstitutional

interpretations and applications of Article V§5(b), Article V§(b)(3) and

rule 9.030, the courts interpret and apply its sanction authority as

elaborated in Spencer v. State 717 So. 2d 95 (Xxx. Dist. Ct. App.

1998) and Xxxxxxx statute 944.279 as tools to restrict further valid

challenges to, and to retain, the unlawful custody of the appellant in

xxxxcf5231 while the judgements and sentences are void ab initio.

189.    The U.S. Supreme Court has determined a state's application

of state law is unconstitutional, based on the Supremacy Clause and

other fundamental constitutional principles like due process, equal

protection, and the right to a fair hearing of the 5th, 14th, 6th

amendments.  The Court's power to strike down state laws that

violate the Constitution is established through judicial review, as seen

in cases like Marbury v. Madison, 5 U.S. 137 (1803).

190.    The Project 2025 policy has and will cause harm to Plaintiff(s)

and similarly situated persons. The Court should declare that the

policy project 2025 is unlawful and enjoin any actions taken to

implement it. Judgements, sentences, and orders entered without

subject matter jurisdiction, or without determination of the reviewed

court's lack of subject matter jurisdiction must be declared void.

Plaintiff must be immediately released from custody, kidnapping and

threat of violence under guise of official conduct, in violation of the

United States and Xxxxxxx Constitutions by the executioners of the

void orders. Injunctive relief must be granted. Plaintiff has a right to

be protected from "trickle-down" government discrimination.

Constitutional guarantees must not be reduced to discretion.

Unconstitutional policies must be declared so.

## GROUND B(6)

UNDER REPUBLICAN GOVERNANCE, A FEDERAL CIRCUIT'S

INTERPRETATION AND APPLICATION OF ALL JURISDICTIONAL LAW

INCLUDING BUT NOT LIMITED TO 28 U.S.C.§ 2241 IS

UNCONSTITUTIONAL

191.     Plaintiffs reallege and incorporate by reference the allegations

set forth in each of the preceding paragraphs.

192.     In Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) the U.S.

Supreme court found that "The plain language of the habeas

statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."

193.    Pursuant to the project 2025 policy, the Federal Circuits under republican governance construe 2241 and Title 28 Chapter 81 as a tool to control the outcome of cases of people of color such as this Asian American citizen even if inconsistent with clearly established law.

194.    The United States Supreme Court only accepts 100-150 of the more than 7,000 cases that it is asked to review each year. Jurisdictional law is construed as a tool to restrain petitioners from relief freely given white persons.

195.    Constitutional guarantees, including but not limited to meaningful access to the courts, due process, equal protection, are reduced to discretion.

196.    In the cases of the plaintiff petitioner, the federal circuit, in determination of its subject matter jurisdiction and the subject matter jurisdiction of the court being reviewed, have ruled inconsistently as demonstrated above, with clearly established law as determined in the cases of sufficiently similarly situated white persons and thus the

petitioner has been illegally detained and in custody in violation of the U.S. Constitution pursuant to void judgements and sentences.

197.    The Project 2025 policy has and will cause harm to Plaintiff(s) and similarly situated persons. The Court should declare that the policy project 2025 is unlawful and enjoin any actions taken to implement it. Judgements, sentences, and orders entered without subject matter jurisdiction, or without determination of the reviewed court's lack of subject matter jurisdiction must be declared void. Plaintiff must be immediately released from custody, kidnapping and threat of violence under guise of official conduct, in violation of the United States and Xxxxxxx Constitutions by the executioners of the void orders. Injunctive relief must be granted. Plaintiff has a right to be protected from "trickle-down" government discrimination. Constitutional guarantees must not be reduced to discretion. Unconstitutional policies must be declared so.

**GROUND B(7)**

<u>PLAINTIFF PETITONER AND SIMILARLY SITUATED PERSONS</u>

<u>WILL CONTINUE TO SUFFER IRREPARABLE HARM PURSUANT</u>

<u>TO FURTHERANCE OF THE PROJECT 2025 POLICY</u>

198.    Plaintiffs reallege and incorporate by reference the allegations
set forth in each of the preceding paragraphs.

199.    An injunction is warranted because there is a significant
likelihood that Federal review will find in the Appellant's favor and
grant the requested relief, releasing him from custody, kidnapping
and threat of violence under guise of official conduct, as the case
presents questions of both state and federal law but the state court's
decision is either contrary to, or involved an unreasonable application
of, clearly established federal law as determined by the Supreme
Court, in spite of the project 2025 scheme of violating the
fundamental law without expressing the violation on record.

200.    The statutes of limitations are irrelevant as a void judgement
and sentence can never become final. There is no interest in finality
of a void judgement and sentence. Because a void judgment is a
nullity, there's no public interest in upholding its finality, as it doesn't
affect, impair, or create any legal rights.

201.    An injunction followed by reversal of the trial court order by this District Court will save the parties' additional time and expense of potentially needless litigation, and additional time and expense of the conditions and custody, kidnapping and threat of violence under guise of official conduct, of a void judgement and sentence.

202.    It is in the public interest, where the legislation nullifies or places at a minimum a chilling effect upon the assertion of Constitutional protections of the Double Jeopardy clauses, for a single course of conduct as recognized by the same elements law, under Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) and Xxxxxxx Statute 775.021.

203.    It is in the public interest, where the interpretations and applications of statutes place a chilling effect upon the assertion of all Constitutional protections.

204.    Protecting individuals from double jeopardy is considered in the public interest as it safeguards against government overreach and ensures fairness by preventing repeated trials, punishments, and ongoing punishments for the same offenses.

205.    Protecting individuals from violations of any Constitutional provision is considered in the public interest as it safeguards against government oppression and trickle-down discrimination.

206.    Unconstitutional laws can infringe upon the rights and liberties of citizens and declaring them void safeguards these fundamental protections.

207.    The power of judicial review, where courts can review and strike down laws that violate the Constitution, is a cornerstone of the legal system and essential for maintaining a balance of power.

208.    See Dombrowski v. Pfister, 380 U.S. 479 (1965).

209.    The Project 2025 policy has and will cause harm to Plaintiff(s) and similarly situated persons. The Court should declare that the policy project 2025 is unlawful and enjoin any actions taken to implement it. Judgements, sentences, and orders entered without subject matter jurisdiction, or without determination of the reviewed court's lack of subject matter jurisdiction must be declared void. Plaintiff must be immediately released from custody, kidnapping and threat of violence under guise of official conduct, in violation of the United States and Xxxxxxx Constitutions by the executioners of the void orders. Injunctive relief must be granted. Plaintiff has a right to

be protected from "trickle-down" government discrimination.

Constitutional guarantees must not be reduced to discretion.

Unconstitutional policies must be declared so.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that the Court:

a. Declare unconstitutional the project 2025 policy and enjoin defendants from conduct in furtherance thereof;

b. Declare unconstitutional and Void for lack of subject matter jurisdiction ab initio, every order in and those arising from Orange County case number xxxxcf5231, both state and federal and enjoin defendants from enforcing them as a void order does not affect, impair, or create any legal rights, including a legal claim limiting the procedure in which challenged;

c. Order that a Constitutional order must issue, addressing the lack of subject matter jurisdiction, addressing that the plaintiff petitioner be immediately released from custody or restraint and or, addressing that his privileges be immediately reinstated as if never suspended as a void order does not affect, impair, or create any legal rights, including a legal claim limiting the procedure in which challenged;

d. Declare unconstitutional Xxxxxxx's interpretation and application of Article V §5(b), Article V §3(b)(3), rule 9.030, sanction authority as elaborated in Spencer v. State, 717 So. 2d 95 (Xxx. Dist. Ct. App. 1998) and, Xxxxxxx Statute 944.279, and enjoin defendants from this conduct;

e. Declare unconstitutional republican controlled region federal court interpretation and application of 2241 jurisdictional law and enjoin defendants from this conduct;

f. Permit primary plaintiff to proceed under a pseudonym and enter a protective order protecting against disclosure of sensitive personal identification information, sealing documents where it is not possible to redact, and restricting recipients of documents that do contain identifying information from disclosure to the other defendants;

g. Plaintiffs respectfully request that the Court issue an ex-parte temporary restraining order given the ongoing irreparable injury and the danger of retaliation pursuant to the matters of relief sought in a, b, c, d, e, and f.

## CERTIFICATE

I John Doe, swear under penalties of perjury, that the foregoing is true, correct and not meant to mislead. I also certify that a true, correct

copy has been forwarded.

U.S. Attorney 601 D St NW, Washington, DC 20004

Attorney General PL-01 The Capitol, Tallahassee, FL 32399-1050

The Executive Office, Office of the Legal Adviser, Suite 5.600, 600 19th Street NW., Washington DC 20522.

Executive Office of the President, 1600 Pennsylvania Avenue, NW, Washington, DC 20530

Elon Musk   52448 Boca Chica Blvd, Brownsville, TX 78521

Donald J. Trump 1100 S. Ocean Blvd. Palm Beach, FL 33480

Stephen Miller 1600 Pennsylvania Avenue, NW, Washington, DC 20530

James David Vance 1600 Pennsylvania Avenue, NW, Washington, DC 20530

Republican National Committee 310 FIRST STREET SE WASHINGTON, DC 20003

Fox News Network LLC 1211 Avenue of the Americas New York, NY 10036

The Heritage Foundation 214 Massachusetts Ave NE. Washington D.C. 20002-4999

Timothy Kelly 333 Constitution Avenue, N.W. Washington, DC 20001

Carl Nichols 333 Constitution Avenue, N.W. Washington, DC 20001

Angela D. Caesar 333 Constitution Avenue, N.W. Washington, DC 20001

Jean-Claude Douyon 333 Constitution Avenue, N.W. Washington, DC 20001

Megan Bleskoski 333 Constitution Avenue, N.W. Washington, DC 20001

Claude Alde Case Administrator 333 Constitution Avenue, N.W. Washington, DC 20001

Unknown Intake clerk(s) 333 Constitution Avenue, N.W. Washington, DC 20001

John Doe

125cv1229@mail.com